# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M., a minor by and through his guardian ad litem CHRISTOPHER MROZINSKI,<br><br>Plaintiff,<br><br>v.<br><br>SAN JUAN UNIFIED SCHOOL DISTRICT, et al.,<br><br>Defendants. | No. 2:16-cv-02380-KJM-KJN<br><br>ORDER |

A student with multiple disabilities alleges his teacher and behavioral aide repeatedly confined him in a classroom storage closet for up to an hour at a time. The minor, A.M., through his father and guardian ad litem, Christopher Mrozinski, brought this action against his teacher, school district, aide, and the aide's employer, alleging violations of state and federal law. After significant discovery, the parties reached a settlement agreement at mediation. Plaintiff now moves for approval of the settlement agreement and requests the court establish a special needs trust to maintain A.M.'s eligibility for public benefits. The motions are unopposed. Following the April 20, 2018 hearing and for the following reasons, the court GRANTS both motions.

I. <u>BACKGROUND</u>

Plaintiff A.M. is a 17-year-old minor with multiple disabilities. A.M. was born with bladder exstrophy, a birth defect in which the bladder develops outside the body. GAL

1

Decl., ECF No. 40-4 ¶ 2. A.M. is incontinent and requires assistance with toileting and personal hygiene. *Id.* In addition, A.M. has been diagnosed with severe autism and sensory processing disorder, and both conditions limit his ability to learn, communicate, express himself and socialize. *Id.* He has difficulties with balance, body and spatial awareness, and he is sensitive to texture, light and sound. *Id.* He also has epilepsy, for which he takes anti-seizure medicine. *Id.* Although A.M. is non-verbal and is unable to read or write, he communicates in a limited fashion using a picture exchange program and electronic communication device. *Id.*

During the 2015-2016 school year, A.M. was a student in defendant Tracy McDonald's classroom at the Ralph Richardson Center in the defendant San Juan Unified School District (District). Mot., ECF No. 39 at 4.[1] Throughout this period, A.M. received behavioral services from defendant 1st Step Applied Behavior Analysts, Inc. *Id.* A 1st Step behavioral aide, Nicholas Tische, informed A.M.'s mother that, at McDonald's direction, he regularly confined A.M. in a closet for up to an hour at a time while A.M. hit and kicked the door attempting to get out. *Id.* A.M.'s father contends Tische admitted this again during a meeting with A.M.'s 1st Step care team, after which 1st Step removed Tische from A.M.'s care team. *Id.* at 5. A.M.'s father then complained to McDonald and the District. *Id.* Although each defendant is a mandatory reporter under California law, no defendant reported A.M.'s alleged abuse to the authorities. *Id.* As a result of defendants' actions, A.M. suffered emotional distress. *Id.*

II. <u>LEGAL STANDARD</u>

District courts have a duty to protect the interests of minor or incompetent litigants. *See* Fed. R. Civ. P. 17(c)(2) (requiring a district to "appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). This special duty requires a district court to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also* E.D. Cal. L. R. 202(b) ("No claim by or against a minor or incompetent person may be

---

[1] All citations to the parties' briefs refer to ECF page numbers, not the briefs internal pagination.

2

settled or compromised absent an order by the Court approving the settlement or compromise.").

The Ninth Circuit instructs district courts to "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-82. This requires the court to "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182.

III.  DISCUSSION

   A.  Fair and Reasonable

Under the terms of the settlement agreement, defendants agree to pay A.M. $65,000, with the District paying $25,000 and 1st Step paying $40,000. Mot. at 6; Wiley Decl., ECF No. 40 ¶ 6; *see* ECF No. 40-1 (Settlement Agreement). A.M.'s counsel requests a 25 percent contingency totaling $16,250.00. Wiley Decl. ¶ 7. A.M.'s counsel further seeks $7,233.59 for fees advanced throughout litigation. Wiley Decl. ¶ 13. Finally, the Law Office of Michael Pearce requests $2,500 in attorney's fees incurred in drafting the special needs trust for distribution of A.M.'s settlement funds. Wiley Decl. ¶ 15; Ex. B (SNT invoice). If the settlement is approved, A.M. will receive a net settlement of $39,016.41. Mot. at 7.

The facts of this case confirm the proposed settlement is fair and reasonable. The parties conducted significant discovery, exchanging more than 11,000 pages of documents and conducting multiple depositions, including deposing Tische whose testimony would likely be critical to resolving the case. *Id.* at 5. At hearing, the parties confirmed that the settlement accounted for their credibility assessments of Tische. Throughout litigation, defendants consistently denied any wrongdoing, and provided at least one witness who corroborated defendants' contention that A.M. was never secluded in the classroom. *Id.* at 10. Defendants further denied that A.M. suffered any damages. *Id.* at 11. Because A.M.'s disabilities preclude him from communicating effectively, he cannot testify on his own behalf or personally rebut defendants' contentions. *Id.* at 10. A.M.'s disabilities likewise present potential issues in proving

3

causation and establishing his emotional distress damages. *Id.* at 11. Beyond the costs inherent in continued litigation, including further deposition costs, continued litigation would require A.M. to pay experts to assess and testify to his emotional injuries. *Id.* Settlement avoids these additional costs and the potential difficulties of proof. *Id.*

Further, review of recovery in similar cases confirms the settlement is reasonable. *See Robidoux*, 638 F.3d at 1182. In *Colbey*, for example, the court approved a $28,650 net settlement where the plaintiff, a student with behavioral and emotional disabilities, alleged his school district ignored his disabilities, did not protect him from peer harassment and inappropriately restrained him in a time-out room where another student attacked him and broke his collarbone. *Colbey T. v. Mt. Diablo Unified Sch. Dist.*, No. C 11-03108 LB, 2012 WL 1595046, at *1-2 (N.D. Cal. May 4, 2012). Similarly, in *C.B.*, plaintiff, an eleven-year-old student with disabilities, including a mood disorder and attention deficit hyperactivity disorder, alleged that rather than addressing his disability symptoms as prescribed in his individualized education program, his school district called police and had him handcuffed and removed from his school in a police car. *C.B. v. Sonora School Dist.*, 691 F. Supp. 2d 1123, 1126, 1139 (E.D. Cal. 2009). The court ultimately approved a net settlement $12,437.84 for the plaintiff. *C.B. v. Sonora Sch. Dist.*, No. CV-F-09-285 OWW/SMS, 2010 WL 11571248, at *1 (E.D. Cal. Mar. 4, 2010). These cases confirm that A.M.'s net settlement of $39,016.41 is fair and reasonable. The motion for approval of the settlement agreement is GRANTED.

B. <u>Preservation of Eligibility for Need-Based Benefits</u>

A.M. requests the court establish a special needs trust into which the settlement funds will be placed to preserve A.M.'s eligibility for public benefits. Mot. at 7-9. Because A.M.'s "severe, permanent, disabilities that substantially impair his ability to provide for his own care and custody" will "prevent him from living independently . . . and from obtaining gainful employment when he reaches adulthood," his guardian ad litem views public assistance programs as "vital to [A.M.'s] continued support and well-being." *Id.* at 7-8; GAL Decl. ¶¶ 3-4.

When a recipient of "needs based" Supplemental Security Income ("SSI") benefits from the Social Security Administration and Medi-Cal has more income or resources than

permitted, he becomes ineligible for SSI payments and Medi-Cal benefits. *See* 20 C.F.R. § 416.202(c)-(d); *see also* Cal. Code Regs., tit. 22 §§ 50513, 50515 and 50517. Under certain circumstances, placing permitted assets in a special needs trust allows an SSI beneficiary to maintain eligibility for benefits. *See* 42 U.S.C. § 1396p(d)(4)(A); Cal. Prob. Code § 3604(b).

A.M. submits a special needs trust drafted by the Law Office of Michael Pearce, an estate planning firm with expertise in developing estate plans involving persons with disabilities. ECF No. 40-3 (Trust). Under the draft trust, A.M.'s parents will serve as initial trustees. *Id.* at 9. Both parents waive compensation for fulfilling their trustee roles. Mrozinski Decl. ¶ 5. Citing the significant cost of compliance, A.M. requests the court waive any requirements for (1) posting a bond, (2) filing accounts and reports with the court, (3) obtaining court approval of proposed trustee changes, and (4) obtaining court approval for trustee compensation. Mot. at 9; *see* Cal. R. of Court 7.903(c)(5)-(8). Considering A.M.'s relatively modest recovery, A.M. argues these provisions would pose a "financial burden" that may "consume the trust funds" if not waived. Mot. at 9. *Cf.* Cal. R. of Court. 7.903(d) (exempting trusts with assets of $20,000 or less from compliance with 7.903(c)(5)-(8)). Good cause established, the court GRANTS the request to establish a special needs trust, which need not comply with the requirements cited above.

IV. CONCLUSION

The court finds the proposed settlement and special needs trust serve the best interests of A.M. and therefore GRANTS the motions to approve settlement and establish a special needs trust and ORDERS as follows:

1. Defendants shall pay plaintiff's counsel the full settlement amount as specified in the settlement agreement within 30 days of the date of this order;
2. Plaintiff's guardian ad litem, Christopher Mrozinski, shall execute the special needs trust for plaintiff;
3. Venue for ongoing oversight of plaintiff's special needs trust shall lie with the Superior Court of the State of California, Sacramento County;

/////

5

4. From the settlement proceeds, $39,016.41 shall be distributed to plaintiff's special needs trust;

5. From the settlement proceeds, $16,250.00 shall be distributed to Rukin Hyland LLP for attorney's fees and $7,233.59 shall be distributed to Rukin Hyland LLP for reimbursement of litigation costs incurred;

6. From the settlement proceeds, $2,500.00 shall be distributed to the Law Office of Michael Pearce for attorneys' fees in connection with drafting the special needs trust for Plaintiff.

Dated: April 25, 2018.

_____
UNITED STATES DISTRICT JUDGE